UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

In re:                                             No. 2:07-cv-00447-MCE

LAWRENCE E. ORMSBY and
CINDY J. ORMSBY,

      Debtors.

                                       MEMORANDUM AND ORDER

LAWRENCE E. ORMSBY,

      Appellant,

   v.

FIRST AMERICAN TITLE COMPANY
OF NEVADA, a Nevada
Corporation,

      Appellee.

----oo0oo----

Appellant Lawrence E. Ormsby ("Debtor") appeals the Bankruptcy Court's granting of summary judgment in favor of First American Title Company of Nevada ("Creditor"). The Bankruptcy Court ruled that the Nevada state court judgment against Debtor and in favor of Creditor was non-dischargeable under 11 U.S.C. § 523(a)(4). For the reasons set forth below, the Bankruptcy Court's decision is affirmed.

1

**BACKGROUND**

Creditor is a title company that is engaged in the business of providing escrow services and title insurance for real property transactions. Debtor is the owner of Inter-County Title Company of Nevada ("Inter-County"). Inter-County is a Nevada Corporation which commenced business as an escrow and title agent in Nevada in May of 2000.

The official public records for transactions affecting real property in Washoe County, Nevada are maintained by the county recorder. These records date back to the mid-1800s and reflect deeds, deeds of trust, mortgages, judgments, and other documents concerning real property in Washoe County. The Washoe County Recorder organizes the various documents by creating a grantor/grantee index, which is available for public examination.

The process of examining the title of a specific tract of land by reviewing the grantor/grantee index is a cumbersome and time-consuming operation. To streamline the title search process, title companies create base files, subdivision files, and preliminary title reports, which are in turn used as an aid for examining and insuring title. These documents are accumulated by title companies to show covenants, conditions, restrictions, easements, and other encumbrances affecting real property. Title companies also compile documents in the form of title plants, which constitute a separate method of assembling recorded information based on the location of the property, and which offer search capabilities far beyond the grantor/grantee index available at the county recorder.

1  Both methods provide for considerably more efficient title
2  searches which a title company must perform in preparing
3  insurance policies.
4      In Washoe County, title companies use title plants covering
5  four separate periods of time: 1901 to 1964, 1965 to 1978, 1979
6  to 1999, and 2000 to the present.  These plants are leased to
7  various subscribers, who are not free to transfer, sell, assign,
8  or allow others to access the plants.  Creditor had a one-seventh
9  ownership interest in the 1979 to 1999 title plant and leased the
10 other plant data.
11     In the spring of 2000, Creditor was in possession of the
12 three title plants covering the 1900s, in microfiche format, and
13 kept them in a non-public area for use only by Creditor.  In
14 addition, Creditor compiled a substantial number of base files,
15 subdivision files, and preliminary title reports.  While these
16 documents were made available to customers and occasionally other
17 title companies, Creditor considered most of these records were
18 private and proprietary.
19     Joseph McCaffrey was hired by Creditor in June of 1994 to
20 head Creditor's commercial title business.  In this capacity,
21 McCaffrey had access to all of Creditor's records and title plant
22 microfiche, and used them on a regular basis in the conduct of
23 his business with Creditor.  McCaffrey understood that these were
24 not public records but were private and proprietary to Creditor.
25 ///
26 ///
27 ///
28 ///

In early 2000, Debtor prepared Inter-County to begin operations in Washoe County. Although Debtor purchased the rights to the title plant for 2000 forward, there is no indication that Debtor purchased access to the title plants covering the 1900s. In the spring of 2000, Debtor began soliciting employees of Creditor and another title company to work at Inter-County. McCaffrey was one of the employees Debtor solicited. McCaffrey and Debtor discussed the importance of the title plants to a new title company, and the plants' potential to make a new company competitive. Debtor hired McCaffrey and paid him a $7,000 signing bonus.

In anticipation of his employment for Debtor and Inter-County, and while he still had access to his office at Creditor, McCaffrey began downloading and emailing Creditor's base files, subdivision files, preliminary title reports, and other business records. While having his expenses paid by Debtor, McCaffrey appropriated the 1900s title plants from Creditor, with the encouragement, cooperation, and assistance of Debtor. McCaffrey gave the microfiche files to Debtor, who sent them out to a non-local copy service for duplication.

Inter-County then used these appropriated title plants in searching titles and issuing policies until their return was compelled by court order. From May 2000 to August 2002, Inter-County handled approximately 3,000 escrows. The estimated average cost savings realized by Inter-County's use of the plants was about $50 per transaction, resulting in a total savings of an estimated $150,000.

///

In 2002, Creditor filed an action against Debtor in the Second Judicial District Court of the State of Nevada in and for the County of Washoe. Before trial, Creditor settled with McCaffrey for $15,000 and his agreement to testify against Debtor. After a bench trial covering ten days, the court issued Findings of Fact and Conclusions of Law. In addition to setting forth the facts as stated above, the court determined that Debtor encouraged, assisted, and cooperated with McCaffrey in misappropriating the title plants from Creditor, and used those plants to conduct title searches for the purposes of issuing title insurance.

The court further found that Inter-County converted for its own use the base files, subdivision files, and preliminary title reports of Creditor to assist in the opening of its business and to provide title insurance to customers. The Nevada court found that, in using the title plants and files, Debtor acted maliciously, in that Debtor's conduct was willful, wanton, and reckless.

The court imposed compensatory damages in favor of Creditor, based on the measure of a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret, in the amount of $141,500. The court also awarded Creditor punitive damages in the amount of $283,000 based on evidence of willfulness in Debtor's cooperation with McCaffrey to in the taking, copying and surreptitiously returning the title plants and files. The Nevada court also awarded pre-judgment interest of $47,593.83 (on the compensatory damages), and later, attorney fees of $223,159.50 (pursuant to NRS 600A.060(3)) and costs of $36,821.83.

5

1    Debtor subsequently filed for Chapter 7 bankruptcy
2 protection in the Bankruptcy Court for the Eastern District of
3 California, Sacramento Division.  On October 25, 2005, Creditor
4 filed a complaint with the Bankruptcy Court to establish that the
5 judgment owed it by Debtor was non-dischargeable under 11 U.S.C.
6 § 523(a)(4) and (a)(6).  On May 18, 2006, Creditor filed for
7 Summary Judgment, which was granted by the court on November 17,
8 2006.  Debtor filed for reconsideration on November 22, 2006,
9 which was denied by the court on January 30, 2007.  Debtor filed
10 an appeal to the Bankruptcy Appellate Panel, which was followed
11 by Creditor's filing of an election to transfer the appeal to
12 this Court on February 22, 2007.

## STANDARD OF REVIEW

16    An appellant may petition the district court for review of a
17 bankruptcy court's decision. Fed. R. Bankr. P. 8013.  The
18 applicable standard of review is identical to that employed by
19 circuit courts of appeal in reviewing district court decisions.
20 *See* Heritage Ford v. Baroff (In re Baroff), 105 F.3d 439, 441
21 (9th Cir. 1997).  Legal conclusions are renewed on a *de novo*
22 basis, and factual determinations are assessed pursuant to a
23 "clearly erroneous" standard.  Murray v. Bammer (In re Bammer),
24 131 F.3d 788, 792 (9th Cir. 1997) (en banc).
25 ///
26 ///
27 ///
28 ///

6

Findings of fact are "clearly erroneous" only if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." In re Marquam Inv. Corp., 942 F.2d 1462, 1466 (9th Cir. 1991) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). The appellant has the burden of proof in convincing the reviewing court that such error has been committed, and the reviewing court should not reverse simply because another decision could have been reached. In re Windsor Indus., Inc., 459 F. Supp. 270, 275 (N.D. Tex. 1978).

**ANALYSIS**

In determining the non-dischargeability of the Nevada state court judgment against Debtor, the Bankruptcy Court considered the "larceny" provision of 11 U.S.C. § 523(a)(4) and the "willful and malicious injury" provision of subsection (a)(6). The court concluded that subsection (a)(4) barred the Debtor from discharging the debt in bankruptcy. On review, this Court analyzes *de novo* the applicability of both subsections.

As for the factual basis for its findings, the Bankruptcy Court adopted the findings of the state court and incorporated them into the record. This Court concludes that neither the factual determinations of the state court, nor their adoption by the Bankruptcy Court, are clearly erroneous. Therefore, the state court decision provides the factual basis for the inquiry here.

///

However, this Court does not give preclusive effect to the state court judgment in determining the applicability of the larceny or willful and malicious injury terms of the bankruptcy code. "The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings 'shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken.'" In re Nourbakhsh, 67 F.3d 798, 800 (9th Cir. 1995) (citing 28 U.S.C. § 1738). The preclusive effect of a state court judgment rests upon the preclusion law of the state in which the judgment was issued. Nourbakhsh, 67 F.3d at 800. Per Nevada state law for a party to be precluded from litigating a previously addressed issue, "(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; and (3) the party against whom the judgment is asserted must have been a party in privity with a party to the prior litigation." Kahn v. Morse & Mowbray, 117 P.3d 227, 235 (Nev. 2005).

The issue here is whether the judgment against Debtor is dischargeable in bankruptcy, which turns on the federal definitions of larceny and willful and malicious injury, as used in 11 U.S.C. § 523(a). In its decision against Debtor, the Nevada court did not consider larceny as such, but termed its conclusions of Debtor's actions as misappropriation and conversion.

The court did specifically describe Debtor's conduct as willful and malicious, but did not make any findings of the subjective intent of Debtor with respect to Creditor, which must be shown to support the exception to discharge provided in 11 U.S.C. 523(a)(6).  In re Jercich, 238 F.3d 1202, 1208 (9th Cir. 2001). As one would expect, the state court addressed the claims before it and this determination did not include all the requisite elements of dischargeability.  Therefore, this Court cannot rely solely on the conclusions of the state court judgment in determining the status of Creditor's claim.  Therefore, this Court must address those elements and apply the facts and relevant conclusions of the state court to the issues at hand.

**1. Larceny**

Subsection (a)(4) of 11 U.S.C. § 523 states that bankruptcy protection under section 727 of the title does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Creditor makes no claim that Debtor was acting in a fiduciary capacity, nor claims that embezzlement occurred.  Therefore, the focus of the inquiry is on the term "larceny."

There exists some confusion and seemingly contradictory authority as to whether larceny requires a finding of fraud, including the requisite misrepresentations, reliance thereon, and damages.  Significant authority indicates that fraud is not a necessary component of larceny.
///

"For purposes of section 523(a)(4), a bankruptcy court is not bound by the state law definition of larceny but, rather, may follow federal common law, which defines larceny as a 'felonious taking of another's personal property with intent to convert it or deprive the owner of same.'"  4 Collier on Bankruptcy § 523.10(2) (15th ed. rev. 2007).  The Judiciary Committee House Report on the Bankruptcy Reform Act of 1978 explains that the intent of section 523(a)(4) is to include "conversion under which the debtor willfully and maliciously intends to borrow property," even without an intent to inflict injury.  H.R. Rep. No. 95-595, at 364 (1977).  The United States Supreme Court has stated that a judgment for damages awarded under state law against a debtor who has committed larceny "is clearly a claim which is nondischargeable in bankruptcy."  Ohio v. Kovacs, 469 U.S. 274, 279 (1985).  Finally, Debtor points to no authority whereby the elements of fraud are actually applied to an analysis of larceny in a bankruptcy proceeding.

    Per the state court judgment, Debtor encouraged, cooperated, and assisted in the misappropriation of the title plants from Creditor.  Debtor had knowledge of and acquiesced in the theft and conversion of the title plants. Debtor sent the microfiche title plants to a non-local copy service.  Debtor's title company converted to its own use Creditor's proprietary base files, subdivision files, and preliminary title reports to assist it in the opening of their business.  This Court concludes that these facts, in conjunction with the remainder of the state court findings, amounts to the "felonious taking of [Creditor's] personal property with intent to convert it" by Debtor.

10

Therefore, section 523(a)(4) works to bar the bankruptcy discharge of Debtor's obligation to Creditor.

### 2. **Willful and Malicious Injury**

Subsection (a)(6) of 11 U.S.C. § 523 states that bankruptcy protection under section 727 of the title does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." In <u>Geiger</u>, the United States Supreme Court held that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 64 (1998). The Ninth Circuit has held that "under <u>Geiger</u>, the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct." <u>Jercich</u>, 238 F.3d at 1208 (emphasis in original). It is not enough, therefore, that Debtor caused injury to Creditor by the theft of the title plants and other proprietary files. It must be shown that Debtor intended to injure Creditor or that Debtor knew his actions were substantially certain to injure Creditor. <u>Id</u>. In determining the subjective intent or knowledge of Debtor, this Court need not "simply take the debtor's word for his state of mind." <u>In re Su</u>, 290 F.3d 1140, 1146 (9th Cir. 2002). Rather, this Court "may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." <u>Id</u>.

11

1  Debtor necessarily knew the value of title plants and other
2 title documents in saving title research time and expense in the
3 handling of escrows.  It is also substantially certain that
4 Debtor knew of the availability of the title plants and the cost
5 of legally accessing them.  In fact, Debtor purchased the title
6 plant data covering the year 2000 and forward from the operator
7 of the Washoe County title plants, and further inquired about the
8 1979 to 1999 plant.  It is therefore highly likely that Debtor
9 was aware of Creditor's ownership interest in the 1979 to 1999
10 title plant and that his use of a misappropriated copy of that
11 plant would serve to deprive Creditor of revenue, and thus injure
12 Creditor.  Further, Debtor must also have known that the
13 conversion by Debtor's title company of Creditor's proprietary
14 base files, subdivision files, and preliminary title reports to
15 assist in the opening of its business as a competitor to Creditor
16 would result in injury to Creditor.  Therefore, this Court finds
17 that Debtor must have actually known and believed that injury to
18 Creditor was substantially certain to occur from Debtor's illicit
19 theft and conversion of the title plants and other title
20 documents from Creditor.

21  A court must not conflate the "willful" and "malicious"
22 prongs of a section 523(a)(6) analysis. Su, 290 F.3d at 1147.
23 "A 'malicious' injury involves '(1) a wrongful act, (2) done
24 intentionally, (3) which necessarily causes injury, and (4) is
25 done without just cause or excuse.'"  Jercich, 238 F.3d at 1209.
26 ///
27 ///
28 ///

12

Debtor's active involvement in the misappropriation of the title plants and other title documents from Creditor constitutes a wrongful act.  The state court found that Debtor's denial of involvement with the misappropriation of the title plants was not credible, but that Debtor acted willfully and wantonly, and therefore intentionally.  Injury to Creditor was determined by the state court based on evidence of the average time and expense savings per escrow multiplied by the number of escrows that Debtor's title company completed.  Finally, Debtor offers no just cause or excuse for his actions, nor do the facts suggest a basis on which any justification might be found.  Therefore, this Court holds that Debtor's actions, in addition to being willful, were also malicious, and thus that section 523(a)(6) works to bar the bankruptcy discharge of Debtor's obligation to Creditor.

**CONCLUSION**

For the reasons set forth above, the decision of the Bankruptcy Court is AFFIRMED.

IT IS SO ORDERED.

Dated: February 25, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE